Good morning, your honors. May it please the court. My name is Ethan Vallow. I speak for Rosa Della Porta. I'm going to watch my own clock. I'm going to do my best to reserve a minute or two for rebuttal. In our time together today, I would like to try to focus on the jury coercion argument. In sum, Ms. Della Porta contends that the district court erred when it declined to accept the jury's deadlock. Rather than follow the approved procedures on how to address a deadlock, it went, created its own process, and ordered supplemental argument at a time when the parties were aware of a major issue dividing the jury. Because the limits of coercion and the effect of jury coercion for a deadlock jury are most notably addressed during the context of Allen charges in the scope of supplemental instructions, I'd like to say a few words about Allen and the importance of taking care about what a district judge does when he's confronted with a deadlock jury. In short, this court has found that an Allen charge stands at the brink of coercion. And I think the case that I refer the court to and I think it catalogs this circuit's law at the time and does a very good job of stressing the importance of the care the district judge must take when dealing with a deadlock jury is called United States v. Mason. It was written by then-Judge Kennedy. And Mason itself sets forth the standard to be applied what a judge takes action or intrudes on a jury that's declared a deadlock. And the court is supposed to look at, this court is supposed to look at four factors when assessing whether the district court's actions amount to coercion. And one is supposed to address the form of the intrusion. Typically, it's the charge that was approved in Allen, the 2P charge actually. In this case, it's the supplemental arguments which provided advocacy or injected advocacy. Again, it's a process when the jury had been deliberating and identified a key factual issue that apparently led to the deadlock. I'm having a hard time finding out what's coercive about that. What exactly is coercive? The judge didn't ask how are you divided or what's the issue that divides you. In fact, he was circumspect in how he phrased his questions. Well, I think there's a few sort of elements of coercion here. One, he didn't just inquire as he told the jury. What he told after the jury, one, informed the district judge and the parties of the major issue dividing it, this question of correlation between payments into Ms. Delaporte's account and payments stolen from the union. Well, they didn't say that was an issue that divided them. They said they wanted some exhibit numbers. Well, I think it's a little more than that. One, you're right. They asked for exhibit numbers. And in between the two places where they asked for the exhibit numbers, they had a colloquy in the note. And what the colloquy said was identify what the evidence they were looking for, which is we're looking for the evidence where the government showed, Agent Gonzalez showed, that there was a correlation. And I guess they were inexact because they said we're a correlation, if any. But they were concerned about whether there was a correlation. That's what they were looking for. And what's important to note is at that time, the jurist and the government prosecutor, my colleague, interpreted it the same way, which is there was no correlation. That's argument. But the jury was saying, look at the note, was saying that's what we're assessing. We're discussing was there a correlation or not, was there doubt for this or not. But the judge didn't answer that question. And the jury found a way. The judge's answer was was it appropriate? I can't answer it the way it's phrased. But he could have, because he could have given the exhibit numbers given during Gonzalez's testimony. Well, I mean, that's like saying, you know, what exhibit numbers prove they're guilty? And the judge says it's 8, 9, and 10. So, I mean, he can't answer that question that way. So he appropriately said I can't respond to the question as phrased. Well, the question phrased was the exhibit numbers during the testimony of Gonzalez. Because the jury, by their action, they were very smart jurors. In any event, there's no objection to how he answered that note. No. So the jury got out of the box. They asked for Gonzalez's testimony right back. And presumably not only did they listen to the testimony, they wrote down the exhibit numbers. So now they got him. And then they came back and said we're deadlocked. And what the judge said was, well, I'm going to inquire if there's a reasonable possibility that they could be deadlocked. The judge didn't do that. The judge said, what can we do, what can I do to help you deliberate? Is there anything, I think the quote is, is there anything I can do to assist you? Which is the message to the jury is can we help you deliberate? What's wrong with that? Well, it depends what he does afterwards. Then they go back into the jury room and talk among themselves. And they come back and say more argument might be helpful. Then he'd have to say, but he said the first question, that'd be inappropriate. Because at this point they know the issue dividing the jury is inviting advocacy. How do you know what the issue dividing the jury is? I don't understand what issue divided the jury. Well, at the real time the judge interpreted it as the question was whether or not there was a correlation. And the prosecutor himself said on the record they are concerned about whether there's a direct correlation. We didn't prove that. And then when the supplemental arguments get given, that's the entire focus of the supplemental arguments. The same issue that was debated by the jury. So how is that coercive? It means the supplemental arguments are informed. You've got a pretty good idea of what it is you ought to talk about. But what makes that coercive? Because the trial is over and the deliberations have begun. And what Mason teaches us is the two most important things, bedrock principles of American jurisprudence are once deliberations begin, the trial is over and the deliberations happen in secret. No one else gets to participate. And as the D.C. Circuit said in the Yanny, when you invite supplemental argument, once you know an issue dividing the jury, maybe it's not the only issue. You're letting partisan advocacy shape deliberations. But the D.C. Circuit doesn't even allow Allen charges. I mean, their jurisprudence is different from ours in that regard, correct? It is one of the three circuits that doesn't allow Allen charges. We take the position, Ms. Delaporte, on appeal, that this is more coercive than an Allen charge. The judge could have given an Allen charge because that's what's appropriate in this circuit. The other thing that Mason teaches where the district court edged significantly and what makes it coercive is he provided no ameliorative instructions. He didn't guide the jury into that they should consider this no more no less. They shouldn't give up a conscientiously held belief just to agree. So it's our position what happened to the jurors is they said we're deadlocked. The judge says, what can I do to help you not be deadlocked anymore? Would you like readback? No. Would you like argument? We'll think about it. You think about that. You let me know. Oh, we'll take the argument as you suggested. But doesn't Lowenfield from the Supreme Court tell us that we have to look at the totality of the circumstances? In essence, all the things that my brethren have been asking you about in assessing whether or not what the judge did was coercive? Yeah, I believe the totality of the circumstances is the test, Your Honor. I would agree. And that's when we determine whether it's coercive or not. But you're arguing that he should have given an Allen instruction rather than allowing supplemental argument, even though he never inquired or asked the jury where they stood numerically on the question of guilt or innocence. Yes, I believe when a district judge is not using an untested procedure that's not sanctioned by Rule 29.1. So your position is that it is unconstitutional under the rules and our general trial procedures to ever permit argument after the case is submitted? We don't have to ask the court to make that decision. The court need not go that far. We've not sought that relief. But I'm still waiting to hear what the coercive element is. I mean, you've taken the position. It seems to me you are saying, in effect, that inherently this is such a process that can't be permitted. But what exactly is coercive about it? No, sometimes I'm less articulate than I hope to be. Our position is that in this case, what Judge Gutierrez did, when the parties were aware of one issue that was dividing the jury, or the issue the jury was investigating, that they give two notes on this issue, including a readback of testimony. Then on three days when they come back and say, we're deadlocked, when you use an untested procedure, when then the partisans inject advocacy on that one issue, and then a jury returns a 21-minute verdict, lightning fast, faster than any other reversal in an Allen charge case, in contrast, much faster in this case. It makes it much faster in this case. That's the evidence of coercion under the totality. Is your position that the arguments, the supplemental arguments, strayed beyond the evidence that the jury had otherwise heard at the trial? No, but they were new arguments that were abandoned as part of the deficient presentation, which led to reasonable doubt. I have a minute and change left. If I may, can we continue our discussion after we hear from my colleagues? Sure. Good morning. Please, the court. I'm Dennis Mitchell on behalf of the respondent, United States. I think it's already been noted by the court that, well, there is no authority that what happened at the district court level with the providing of the supplemental argument constitute any kind of a constitutional violation. And there hasn't been any authority cited by either side, and I'm not aware of any such authority, that allowing for supplemental arguments after the jury has begun deliberations constitutes a due process violation. Is there any authority that it's okay? Pardon? Is there any authority the other way? I mean, I don't find much authority on the subject of supplemental arguments because I'm not familiar with the practice. There is really. Well, Arizona permits it by rule. I was just going to say, in the state court system, for instance, in the California court, it may vary. I'm speculating, but Judge Gutierrez was a state court judge, and he may have been looking at the California rule of court procedure, which does allow for it. It's also allowed in Arizona, and I think also in Indiana. So on the state level, you do have that process available, at least in a few jurisdictions. On the federal side, it is somewhat of an open question. In any case, obviously, the court dealt with it. But there, the court – and I just want to go back to this. Because there's no constitutional violation, then we need to look at, how about the circumstances? The totality of the circumstances show that there was a coerced verdict in this case. Now, in the Annie case, and I think in Smith and his – well, in Annie to begin with, I think the main distinctive feature is that the court invited, intruded into the jury's deliberative process. Where that didn't happen at all here, the circumstances in this case, it would be hard to have circumstances where the judge was more cautious about not trying to intrude into the jury's deliberative process. I would just like to read from the record. At the moment that the jury came back and had indicated that it was deadlocked, the court said, I'm going to ask you some questions. Please listen carefully and only answer the questions that I ask, and don't volunteer or give me any additional information beyond what I ask. And then the court also says, you have indicated that the jury is deadlocked. Is that correct? The foreperson said, yes. The court said, is there anything the court could do to further assist in the deliberations? And the foreperson said, what do you mean by like providing us with some extras? And the court said, I'm sorry. And the foreperson said, do you mean by providing us with some other information? And the court said, let me give you some specific examples to follow up on that question. For example, would it help to read a portion, read testimony back to you, read testimony back to the jurors? And the foreperson said, no, I don't think so. The court then said, would it be helpful, for example, to allow the attorneys five or ten more minutes to argue each particular side? And the foreperson said, I don't know if that would help us. And then the court said, all right, go back to the jury room, and I don't know if you want to discuss any particular issues as to whether or not something else would help you come to a decision. Let me know your view that you're still deadlocked. Thank you. And subsequent to that, it was the jury that came back and asked to have more argument, as the court had suggested. There was no inquiry into the jury as to any numerical division, what issues they were confronting. There wasn't any kind of an invitation, as you had in I.N.E., where the court was inviting the jury, tell us what's the problem, where are you deadlocked, what are the issues that you're facing? And in the face of that, the I.N.E. jury came back and gave three items on which they were deadlocked. We didn't have that here. We simply had the jury, which didn't have to take on the judge's suggestion. And the judge had mentioned a couple of things. They could go back, and they were free to come back and say we're still deadlocked, there's nothing else that can help us. That's it. Of course, the colloquy came after the jury sent out the note and after the testimony of the Labor Department agent was re-read. That's correct. So you knew they were focusing on if she took the money, what did she do with it? Yes. And I'll be the first to admit that in the supplemental argument, the first thing I went to was that the government was not obligated to show what the defendant did with that money. And honestly, I did that because I saw the note, and I also knew about the readback. I still don't know whether or not that was the issue that was hanging up the jury. In the end, there is speculation involved because I didn't know for certain. Well, and part of your proof problem, if to the extent that that was what was holding up the jury, was that there was no direct correlation. You couldn't show money siphoned off on the same day immediately going in the same amount to her bank account. That's correct. That's correct. And also, the other distinctive feature, though, is, yes, we did have the benefit of the note and the request for the readback, but that was something the jury elected to tell us. It wasn't something that the court had asked the jury to disclose. And that is an important distinction. And that's where I think the D.C. Circuit had problems. In Yarborough, for instance, it rejected the fact that the instruction there, which they should have given the Thomas instruction, which was approved there, and instead of the Allen charge, they didn't like the idea. In Yarborough, the court had deviated from what was approved in the D.C. Circuit, and instead used an instruction that invited the jury to disclose. Any time, and I think that's the key, is when the court interposes itself by asking what is troubling you, where are you divided, I think that's where you get in trouble. Here, to the extent that we knew anything was because the jury decided to tell us so. It told us early on that it wanted to see a correlation. It also asked for a readback of the agent's testimony, and then later decided it wanted to have more argument. I believe the judge was perfectly entitled to do that in order to see if it could help break the deadlock. So I think in this case, the circumstances are such that in terms of totality of circumstances, we don't have a coerced verdict. Now, I do grant that it would have been better to give an ameliorative instruction after the closing, but it wasn't asked for. And taking into account the totality of circumstances... Well, I assume the jury was given the standard instruction that the arguments of counsel are not evidence. It was in the initial instructions, I believe. Afterwards, there was no subsequent instructions requested by either side. It would have been better to do it, but I don't think it tips the scale over to a coerced verdict. Unless the court has any other questions, I'll submit. Thank you, Mr. Mitchell. Mr. Bellow. Thank you. I'll be brief, Your Honors. I don't mean to disrespect my colleague by my next comment, but in this matter, the government had a failure of proof. And that really didn't matter because they had an instruction on them to deal with that. Instruction 19. But then in closing argument, they didn't address that issue head-on. They kind of omitted it and left a hole. And the jury, at least some jurors, has some doubt in this case. Like they're entitled to... For all we know, additional argument may have produced acquittal under those circumstances. But a coerced verdict that happens 21 minutes later in either way is inappropriate. Mistrials are an important part of our system. And what Mason teaches us is whenever you're dealing with a jury that's declared a deadlock, that broad judicial discretion gets terribly narrow, and a lot of care has to be done to make sure the jurors don't get the impression that the jurist wants a verdict. That the jurors, two judges, let's face it, in a row, on high, in charge, speak the law, they run the room. The most highly respected person in the jury looks... You'd have a much stronger argument if the judge had said something more. I mean, that colloquy is pretty darn neutral. And the only thing he then permitted was argument by the advocates. So, other than... I mean, what you're really complaining about is the permitting of supplemental arguments. I would make three points if I may. I see my reply is red. To respond to you, Judge Thomas. They are short. The judge suggested the procedure while he knew what was dividing them, after they declared a deadlock. The advocacy then focused on that issue, and the jury was never told to... What Mason says is you have to then give an instruction. You have to, when you give any instruction, to make sure the jurors don't take it coercively, and took no action to either guide them as to how they would interpret the supplemental arguments, or how would they look in the context of the trial, or in any way to give them any message other than go back and get a verdict. And then, again, this is the fastest Allen case we've seen. Fast and contrarious to Mason. 21 minutes. That's the evidence of coercion. If he didn't want an Allen, he could have declared him in the trial. I'm not aware of any case saying that the mere passage of time after the giving of an Allen instruction is coercive. It's one of the four factors. It's a fact that you take into consideration. It's one of the four factors, and I think Mason speaks eloquently how important it is. It's the time of deliberations. It's the time of 20 minutes in comparison to the time of total deliberations. In this case, three days. Those two are two of the four factors. It's the form of the intrusion, which in this case is advocacy, as opposed to neutral instruction in the law, which we contend is more coercive. And because I've left my notes, I will evaporate. This is the second issue, but I'm confident Your Honors have it. Thank you. This was a very well-argued case by both sides. Thank you very much for the case. Pleasure to listen to it.
judges: Silverman, Tallman, Clifton